Okay, we'll call our first case, and the first case, United States of America v. Edward Ross. Mr. McClam. You may proceed. May it please the court, my name is Sean McClam, counsel for the appellant, Mr. Edward Ross. At this point in time, I'd like to reserve five minutes for rebuttal. That request will be granted. Mr. Ross was convicted under sections 924C and 922O as a result of his counsel's deficient performance. While we recognize that his conviction under 924C is not before this court in its certificate of appealability, we would welcome the opportunity to brief that issue further. The issue that is before this court is whether Mr. Ross may recover when his counsel's deficient performance led to his conviction under 922O for the possession of a machine gun. It's well established that in order to show ineffectiveness, the petitioner must show that his counsel's performance was deficient and that he was prejudiced by that deficient performance. So let's, the government seems to concede, I think it's pretty clear it concedes there was ineffectiveness here, right? That's correct. Okay. So the big question is, can, well, and I'm not sure whether you frame it as prejudice or not, because I'll be asking the government whether they concede there's prejudice, but it's just not cognizable. Their argument seems focused on not whether it was deficient, but whether this comes within the purview of 2255 at all, because the, your client can't be released from custody given the other sentences that he's serving. In the reply brief you all submitted, you said, despite the government's attempt to block Mr. Ross's recovery on procedural grounds, the government has failed to identify a single interest weighing in favor of maintaining Mr. Ross's wrongful conviction. And I guess what I'd like you to respond to is the single interest that they go to repeatedly, and that's the language of 2255 and that language about release from incarceration. How do you get around that language? Well, Mr. Ross is challenging his right to be released from his custody under Section 922-0, and just because there's additional convictions that also have concurrent sentences to that charge, it doesn't mean that he can't recover under Section 2255. I'm struggling with that. It says claiming the right to be released. If you win, does he get released or does he stay in jail? He will stay in jail for the same amount of time, yes. Okay. So what do we do with that language in 2255 which says claiming the right to be released? He can't be released. You're acknowledging that. So how do you have a remedy under 2255? Well, besides the direct release, there's also the possibility that because of the collateral consequences of this conviction, it could lead to additional prison time in the future by virtue of ineligibility for early parole release or he may miss out on favorable changes to the law or he could be subject to an increased penalty under recidivist statute. So there's the possibility that it could have additional prison time. So you're saying he's claiming the right to be released sometime in the future for a hypothetical further incarceration. That would, in addition to the concurrent sentence that he's challenging that has a term of imprisonment there, he is claiming also that in the future it could result in additional prison time. I think this is supported by the other cases under Section 2255 that have also permitted release based on the collateral consequences. If you look to the Supreme Court's decision in Rampilla v. Beard, which was 2254, but also the Eighth Circuit's opinion in Paul v. United States, they held that a petitioner on death row could challenge his sentence of death, even though in doing so he would likely stay in prison for the rest of his life. Now, that isn't the case here, but that isn't a claim of the right to be released because he would still have place there. As you said, that's not the case here. But is there a case that you can point to where, because when this petition was filed, there was not even a remote possibility, nor is there today, that Mr. Ross could be released. Is there a case that you can point to that would tell us that notwithstanding his inability to be released, he's still able to bring this claim to be relieved of whatever consequences there are of the conviction under 922-0? What's your best case? Well, the best case would be the Fifth Circuit's opinion in Bass, where they held that a special assessment was prejudicial and granted relief under 2255, and also the United States v. Jones, which is an Eighth Circuit case, where they also granted relief on that basis. Bass was in conflict with its own circuit precedent, wasn't it? And so was the Eighth Circuit case. No, I believe in Bass the opinion that the court cited was Segler, and in that case he was only challenging the restitution and not the underlying conviction. That's a fundamental difference between the cases because, as Segler acknowledged, a petitioner would have been welcome to challenge the trial court's guilt determination, and that's exactly what we're doing here. Segler stated that it fell within the statute to challenge a guilt determination, but that wasn't what Segler was doing in that case. Segler says, and I'll quote to you from page 1137, we hold that when a prisoner asserts an ineffective assistance of counsel claim under 2255, he must satisfy Strickland's prejudice requirement by showing harm that relates to his custody. Harm that relates to his custody. So if he's still in jail, how can a special assessment any more than restitution relate to his custody? Well, the Supreme Court has stated on repeated occasions that you can presume the existence of collateral consequences, and these collateral consequences include the possibility that a conviction could result in additional prison time in the future. But aren't those direct appeal cases? The case of Spencer v. Kimna, the court was a habeas petition, and in that case they held that while the presumption of collateral consequences did apply to the habeas, to a habeas petitioner challenging a wrongful conviction, it didn't apply to the revocation of parole. But they held the same standard forward in that habeas case as they've done in their cases before, in Cibron, Ball, and Rutledge. And that's also consistent with the Second Circuit's decision in Jackson v. Leonardo, where they held because the court could not show that there would not be some jurisdiction now or in the future that didn't rely on the total number of convictions in establishing its sentencing guidelines, there was a conceivable possibility that there could be additional conviction. Again, Jackson is a 2254 case, and 2254 does not include that claiming the right to be released language. You know, if you look at 2241 and you look at 2254, they repeatedly speak about in custody, so does 2255. But 2255 has that additional language. Are we free to ignore that language? How do we give it meaning? Well, it's different, and it's in 2255, not in 2254. Does it make a difference that it's there? Well, I think the way that the courts have interpreted it is acknowledging that there's different kinds of relief that can be granted besides just relief from custody. In the line of cases from Kouropas v. Lavallee, which was in 2254, there are 2255 cases that have held that when a petitioner challenges his conviction while still on parole and he subsequently is released, he may still obtain relief based on the collateral consequences. What about the Seventh Circuit case in Ryan? How can you distinguish your claim here from what was decided there? Well, I believe the Ryan court relied on the concurrent sentence doctrine, which is discretionary before the courts. I think the preponderance of precedent counsels in favor of not implying the concurrent sentence doctrine because of the special assessments and because of the collateral consequences. But that case was also, it wasn't ineffective in this case. Ryan was only claiming the relief he was seeking because the court decided that he could benefit from a change in law. Mr. Ross's Sixth Amendment rights came into play at the time he was convicted because of the improper jury instruction and because of his counsel's deficient performance. But the relief is the issue I think we're focused on. And in Ryan, the court said that 2255 relief wasn't available, even though maybe the reason why it was before the court was not an effective assistance. So I think we're all going back to the same point. How do we distinguish 2255's specific language or ignore it to grant the relief you're requesting? Well, I would again point, my interpretation is that 2255 is allowing the courts to allow petitioners to challenge their sentencing in addition to challenges to convictions. It doesn't state that a challenged conviction has to have an effect on the sentence. And since his challenged conviction does have a term of custody, albeit concurrent. Now, when you say it doesn't have to have an effect on his sentence, Mr. McClam, am I saying your name right? McClam, yes. It seems in fact to explicitly say that. That's what claiming the right to be released means. It means something is going to happen different with the sentence that's imposed on you. You're going to get out of prison when you otherwise wouldn't get out of prison. So I am genuinely struggling with what to do with that language, given that the Supreme Court has done some interesting things with the language in custody. As you've noted, and then later in Millang, they sort of seemed to have moved around a little bit on what it means to be, quote, in custody. I mean, does that broadening of the in-custody language give us license to broaden the meaning of what it is to be released from custody? I'm out of time. Each time the court has addressed an issue on habeas appeal, they have expanded it to include relief that had to do with the collateral consequences. So I think that interpretation speaks volumes about the relief that may be sought in the kinds of petitions that the court will grant under the statute. For these reasons, I respectfully request this court reverse the district court's decision in vacant conviction. All right, Mr. McClam, we'll have you back on rebuttal. Okay, thank you. Mr. Zosmar. Thank you, Your Honor. May it please the Court, Robert Zosmar on behalf of the government. You talked about the single interest that we've referred to, and there's a very powerful single interest which compels us to oppose the petition at this stage, and that is the interest in finality. Habeas is an extraordinary remedy. This is not just another stage in the criminal case. Well, sure, everybody's interested in finality, but the government itself acknowledges that there's a real problem with Count 8, that it ran afoul of staples, and you don't even seem to – I had a little bit of a challenge with the briefing because I wasn't sure whether you were saying there's no prejudice here or whether you were saying it doesn't matter whether there's prejudice here, you just don't get to it under 2255. So it seems like the government's acknowledging Count 8's a mess, and usually when the government acknowledges that a conviction is a mess, they're prepared to say, let's fix it. But here you're saying, no, let's not fix it. So it can't just be finality. Something else has got to be going on because there are final convictions that are problematic where the government all the time will confess error and say, we acknowledge there's a problem here. Something else besides finality is going on, and I assume you're hanging your hat, as you do in your briefing, on that claiming to be release language and some sort of a limitation on our power to do anything about an acknowledged problem. Am I correct about that? That is correct, Your Honor. What we're saying is there is no cognizable prejudice. And we do very often, as Your Honor is aware, concede matters where there has been an error. But we do, I hope consistently, hold the line in habeas matters where it's simply inconsequential, where we do invoke the finality doctrine. And that's the case here because there is no benefit whatsoever to correcting this error. When you say no benefit whatsoever, speak to us about what Mr. McClamish suggests, which is it's impossible to say that there's no benefit whatsoever because things can happen down the road. Clemency decisions, issues with respect to early release that might develop because of decisions that get made by Congress or administrative decisions in the BOP, these sorts of things could make a big difference whether he's got that county conviction or it doesn't. And that's why we have cases that say you can presume there's cognizable prejudice when somebody's been wrongfully convicted. There are two things that I think my friend Mr. McClamish relies on. One is the special assessment, and the other is the collateral consequences that you're referring to. With regard to the special assessment, our position is firm, and I think it's important, that monetary penalties are not challengeable on 2255. That's what the courts have held, and so that's our first position. Then we get to the collateral consequences that Your Honor is referring to. And what we have here are collateral consequences that are so, even speculative is too strong a word, because they are so extremely unlikely. Here you have a defendant who is serving, I think he has 25 years left on this sentence. He was convicted of eight counts, including very serious charges of drug possession and the intent to distribute and using a machine gun in furtherance of a drug trafficking crime. He's a bad guy. No, he's a bad guy, but what I'm saying, Your Honor, is that how is it ever conceivable? What sort of a statute has ever been enacted? Mr. Osmer, I understand where you're going with that answer, but none of that makes this claim not cognizable under 2255. Well, the most important thing to refer to, I think what sums up our position in a nutshell, is the concurrent sentence doctrine. That's what is made for this case, and that's Ryan. Ryan, the Seventh Circuit case that Your Honor referred to, is directly on point here. Now, many of us have been involved, all of us, in different capacities with this court for many, many years, but the robust use of the concurrent sentence doctrine, I think, predates all of us because it no longer applies on direct appeal. Because on direct appeal, there's always a special assessment that is extra. So you can no longer say, well, you got a concurrent sentence, but this court, before the implementation of special assessments, constantly dismissed appeals or at least summarily affirmed on the basis of the concurrent sentence doctrine. What if Congress became so concerned with possession of machine guns that they said if anybody is convicted of a machine gun possession case, there's going to be a special assessment of $100,000 that the court must assess? And if that was the case here, would your argument be different? It would not, because that's a monetary penalty. No, it's a special assessment. If the Congress said the court shall assess anybody convicted $100,000, I guess my question is are you arguing the size of the special assessment or the special assessment itself? The special assessment itself, the fact that it's a monetary penalty. And, again, Mr. Ross had a direct appeal. He had a petition for certiorari. There is a process. But he's doing more here in this case. One thing that I think makes this case more complicated than perhaps some others is that he's not just challenging the monetary assessment. He's challenging the conviction. He's challenging the conviction on the basis of staples. And if you have agreed on the deficiency prong of Strickland, and if we find that there was some prejudice from the special assessment, it puts us in a Strickland case. And, you know, how do we distinguish this? Again, this is where the concurrent sentence doctrine applies. The reason for the doctrine is this court saying repeatedly that this court does not need to reach convictions, even invalid convictions, where it makes no difference in the punishment. And here it makes no difference because the only punishment we can be focused on under 2255 is the term of imprisonment. And that's what Ryan held. And that's also, I know it's not precedential, but, Your Honor, Judge Fisher, you sat on the Parkin panel, which made the same decision last year in identical circumstances, where you just had a challenge to a concurrent sentence on 2255, and this court said we're just not going to reach it. So, yes, this conviction has a problem. We could go back and retry it with the correct jury instructions. No one's doing that, for obvious reasons, because he's serving a 40-year sentence. With respect to the machine gun, Your Honor's hypothetical, he was convicted of another machine gun count that stands, which is count seven that charged him with possession of a machine gun and furtherance of a drug trafficking crime. So we can't conceive of a circumstance in which it will ever matter that he had eight convictions instead of seven in this single case. It doesn't matter. What do we do with the language of the Supreme Court in direct appeal cases and in Spencer v. Kemner, which is not a direct appeal case, where the court talks about presuming collateral consequences? The fact that you're wrongfully convicted allows the court to say, you know what, maybe the government can't foresee any possibility that this could matter, but we're prepared to say that having a wrongful conviction on your record, that's a bad thing, and you can presume bad stuff will flow from it. Well, here's my understanding of the law on this. Malang v. Cook says that collateral consequences by itself are not enough for habeas for someone who's been released. So if you're no longer in custody and you're not seeking release from custody and all you're challenging are the collateral consequences, you cannot pursue habeas. I'm glad you raised Malang because I do want to ask about that specifically. In that case, the court kind of did a two-step around Carafas and said, yeah, sure, we said in custody would still hold for mootness purposes when somebody's out, but we're not dealing with that issue here, so we don't think that sentence he's already served in the 1958 conviction in the state of Washington can count. But for a 1978 conviction, which he hasn't even started to serve yet, we think you could get it that way because there's a detainer in place, and we've got precedent that says a detainer is enough to make somebody in custody for some sentence they haven't started serving. So with all respect to the Supreme Court, it's a little tough to figure out what message they're trying to send. You're not in custody for mootness purposes. You're not in custody for not mootness purposes. You're not in custody if you're out, but you are in custody when you haven't started. What's a mother to do? What are we to make of this, Mr. Zosma? If you point to Malang v. Cook, isn't the message that one could draw from this is that at the end of the day, these concepts are relatively malleable, and as Mr. McClam said, the tendency is to move toward recognizing and giving some relief where there's an acknowledged problem. I think we can synthesize it. I agree the Supreme Court has bounced around, but I think it can be synthesized, and that's our job is to try to do that. Let me try. There's a few layers here. The collateral consequences by itself is not enough, as I said. If you're out of prison, and that's all you want to challenge the old conviction, so he can't challenge that 1958 conviction is what they're saying in Malang. However, if you were in custody, this is Carafas, if you were in custody when you filed your petition, your petition doesn't become moot simply because you've been released because it's a valid claim that you made at the time, and now you have collateral consequences. What the Supreme Court has never addressed, though, which Ryan did in the not-presidential decision in Parkin addresses, it has never addressed a case like this, in which it's one count of a multi-count conviction. In Carafas and every other case, you have somebody challenging their conviction, which could have collateral consequences. In Carafas, it says he won't be able to vote, he won't be able to be a labor official, because he's challenging the entire conviction. The Supreme Court has never addressed a case in which you have one count that adds no collateral consequences by itself. Well, see, aren't you putting the rabbit in the hat there when you say that we'll have no collateral consequences whatsoever? The point they're pressing on us, and it doesn't seem to me to be a frivolous point, is you don't know that they're not going to have collateral consequences. That's a very difficult thing to prognosticate. You may call it speculation, prognostication, guesswork, but the court in Chemena seems to say if the conviction is wrongful, you can presume that there's collateral consequences, negative collateral consequences. Do we throw that presumption out here because the government's having a hard time conceiving of them, or do we accept the presumption that the court has suggested ought to be made? No, we do not accept the presumption here, and that is the concurrent sentence, doctor. That's what it's designed for, is the recognition that when you have concurrent sentences, you don't have collateral consequences, you don't have anything from the additional count. The concurrent sentence doctrine only applies in multi-count cases, and it was designed for this situation where you stand back and say, what are we doing here? We have someone sentenced to 40 years. We have someone with a record as long as anyone's arm. We can't even conceive of a recidivist statute or a parole system or anything in which one additional count will ever matter. Utilizing the concurrent sentencing doctrine would not make this claim uncognizable, would it? Well, it's a question of terminology. I think what it does is it says to the court that it should exercise its authority not to bring relief. But in addition, the court did it right. Yeah, but I mean for... We wouldn't have to say we can't get to it under 2255 because of the concurrent sentencing doctrine. We could get to it and apply the concurrent sentencing doctrine to deny relief. Yes, I agree with that, and I hope that... I don't think we've briefed it. Really? I don't think we've briefed it generally. With regard to the special assessment, our position is there's no power to address that on 2255. Is there another remedy that could be pursued? Not at this time. How can you say... I'm sorry. Go ahead. How can you say that it's not cognizable for special assessments, but it is cognizable for collateral consequences? That seems like an on-off switch to me. Either you take the position that release from custody is it, total, and anything that's not talk about release from custody is off the table, including collateral consequences, or you don't. How's the middle ground? Well, that's where we have to work with what the Supreme Court has said. The Supreme Court has said that you have to be in custody seeking release from custody when you file your petition. But if you're released while the petition is pending, then collateral consequences are enough. But, again, it's where you're challenging the entire conviction. With regard to special assessment, it's really a separate issue. That's never custody from the time you file it to the time it's ruled upon. You're not seeking release from custody. I don't mean to be obtuse, but you've got to work with me here for a second. You're saying that he is not seeking release from custody, but that doesn't mean we can't look at this under 2255. It means he doesn't have prejudice. That's the position? Yes, he doesn't have cognizable prejudice because there's no impact ever. There's no collateral consequences. Okay. But at the same time, you're saying that as to special assessments, it's not that it's not cognizable prejudice. It's that it's outside the purview of the statute entirely. That's right. Two different arguments. That's right. And I just don't see the logic in it. Because in both instances, you're hanging your hat on the claim of the right to be released language. How can it have the effect in one realm of taking it outside the statute and in another realm of leaving it inside the statute but making it not worthy of exercising our discretion to grant it? I think Your Honor is stating a very cogent criticism of Carfas, which itself reversed an earlier Supreme Court decision that had gone the other way. So it's not an easy issue to say that when only collateral consequences are left, your petition has not become lewd. That's the criticism. That's where the oddity is here. But we have to work with what the Supreme Court has given us. We know for a fact that the Supreme Court has never extended the statutory language to apply to purely monetary penalties. It has allowed a petition not to be lewd if there are still collateral consequences. But it has never abrogated the concurrent sentence doctrine that says there are no collateral consequences where you have multiple sentences in a multi-count case. Can I ask one further question, if I can impose on my colleagues? I do want you to respond to the argument that's made by your opposing counsel here that under this logic, somebody with a wrongful death penalty conviction and a concurrent life sentence would have no opportunity under 2255 to come before the court. Do you want to take a crack at that? Sure, straight answer. There are different clauses of 2255. It not only allows release from custody, but it also, I think the quote is, challenging a sentence in excess of the maximum permitted by law. So 2255 is nothing could be more in excess of the maximum permitted by law than a death penalty. And so the law has always permitted collateral heinous challenges to a death penalty. That doesn't really answer the question that we have here. I just want to end, if I could, if I could just one second, refer this court to Justice Powell's statement, which is often referred to. It's quoted in Engle v. Isaac, a 1982 case, but he actually said it earlier. And what he said is that, quote, the continuing theoretical possibility that there is error in every trial and that every incarceration is unfounded. And the court goes on to say more than that. But it's talking about the rule of finality, and it's the reason we're here. It would be easy for us to simply say, Mr. Ross, delete your count aid and move on. But we have to recognize that there are thousands of Mr. Rosses out there who can identify inconsequential errors for decades to come, and the law does not give the recourse for that because of the necessity for finality. Thank you very much, Your Honor. Thank you, Mr. Zosmer. Mr. McClann. Thank you, Your Honors. The language for Strickland is clear for what it takes to constitute prejudice, and that is that the outcome of the proceeding must be different. And that's exactly what we have here today. Because of the improper jury instructions and the insufficiency of the evidence that counsel failed to challenge, Mr. Ross was wrongfully convicted under 922-0. And the Supreme Court has decided not to put the burden of the subject of a wrongful conviction that collateral consequences may arise in the future. Is there another avenue other than 2255 that would allow your client to address that concern? I'm aware of no other avenue, and I think it's important in the Supreme Court's case of Sibron, they held that it's important to attack these convictions and remove the source of a future potential injustice at the time it's before the court. Well, that's what you've got to wrestle with now, right?  counsel for the government repeatedly hit the theme that there are no collateral consequences. There's nothing they can point to. There's not even anything theoretical that's within the realm of the plausible that would affect Mr. Ross down the road. It's not that he's losing the right to vote because he's already got a record as long as you're on, and so he's not going to be voting. Likewise, public office. Likewise, a series of other collateral consequences that are typically cited. He's a man who's in jail, and he's staying in jail, whether aid is on the books or it isn't on the books. So go with that argument. Take it head-on, if you would. I would continue to point this court to the Supreme Court's decision in Ball, Sibron, and Spencer, where they repeatedly are willing to presume the existence of collateral consequences, and that's also what the Jackson court held in the Hades petition for ineffectiveness, where they said that because we can't prove that there's no possibility that he couldn't be subject to an additional sentence enhancement because of this conviction, an additional conviction in the future, we're not willing to place that burden on him that these could arise. And the Sibron court also stated that the court is unable to determine how many convictions leave a petitioner's or a defendant's reputation irredeemable. If we're to draw an arbitrary line for what constitutes harm and what doesn't, I don't think that's an avenue this court wants to go down. We already have the two prongs of Strickland, and when you satisfy both of those, there's no reason not to reverse that conviction and prevent the possibility that those collateral consequences could occur in the future. You know, you've talked about Ball. Isn't Ball a direct appeal case? That is a direct appeal case. And how does that advance your argument in the 2255 context? Well, the double jeopardy and the mootness cases that are Ball and those, they seek to determine what harms exist that prevent the case from becoming moot, and those harms don't dissipate because this case is being brought in the habeas corpus. But that's different. Something becoming not moot does not necessarily mean there's an avenue to grant the relief requested. So, again, I ask you, how are those cases, how is Ball helpful to you? Well, I guess to the extent Ball doesn't speak to that point, then Spencer v. Kim does when they do presume those collateral consequences in the habeas context. If I could point out an additional point, the government repeatedly cites to those cases, including cellular, that are challenges to restitution. And we recognize that challenges to restitution alone are not cognizable, but this is fundamentally different because Mr. Ross is challenging his conviction, and his special assessment is impermissible because it's a direct product of his wrongful conviction. And that makes all those cases distinguishable, and even the language of cellular says you can challenge a trial court's guilt determination. Is there any limiting principle on the finding of collateral consequences? No, I don't think so. I think the limiting principle in these cases is the language of Strickland, which says there must be deficient performance and there must be prejudice that has an outcome in the proceeding. And I don't think that the floodgates are all of a sudden going to open because this is a narrow issue where there's clear wrongful conviction and clear deficient performance as well as a clear wrongful outcome. But it certainly would open on the question if you could show collateral consequences. If the $100 assessment was a collateral consequence, it seems to me anything between there and a life sentence has to constitute collateral consequences. Well, we're not asking this court to do anything other than what the other courts have held in similar scenarios that were on direct appeal and habeas appeals, and that's what the Fifth and the Eighth Circuit did in Bass and Jones, and it's what the Eighth Circuit did in Jackson, is they were willing to presume those collateral consequences in this scenario because the courts did not wish to push the burden that those consequences may exist in the future. Okay. I see we're out of time. I respectfully request that this court reverse the district court and vacate the conviction. Thank you. Mr. McClam, we thank you very much, and we thank all counsel in this case, and we particularly want to thank the University of Pennsylvania School of Law and the Deckard firm here in Philadelphia for your commitment to the case on a pro bono basis, and we'll take the matter under discussion.